# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 c 8115 | **DATE** | September 28, 2001 |
| **CASE TITLE** | | *McGuire v. City of Chicago* | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the defendant city of Chicago's motion to dismiss [3-1 is GRANTED in part and DENIED in part. The parties are ordered to appear before the court for status on Friday, October 19, 2001 at 10:00 a.m. IT IS SO ORDERED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | **Document Number** |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 2 8 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | 8 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| RTS | courtroom deputy's initials | | FOR DOCKETING 01 SEP 28 PM 2:05 | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS MCGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 00 c 8115 |
| | ) | |
| CITY OF CHICAGO, an Illinois Municipal | ) | |
| Corporation, and PATRICK ROCKS, Deputy | ) | |
| Corporation Counsel for the City of Chicago | ) | |
| individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
SEP 2 8 2001

## MEMORANDUM OPINION AND ORDER

**BLANCHE M. MANNING, District Judge:**

Plaintiff Thomas McGuire, a firefighter employed by the City of Chicago Fire Department ("CFD"), has filed a three-count complaint against the City of Chicago (the "city") and Patrick Rocks, deputy corporation counsel for the city, alleging that he was unconstitutionally deprived of his rights to legal representation under the city's municipal code when the city decided not to provide legal representation in a civil rights lawsuit brought against him by another firefighter.

In count one, McGuire alleges unconstitutional violations of due process, arguing that the city acted arbitrarily and capriciously when it denied his request for payment of legal fees. In count two, McGuire alleges a violation of equal protection under the fourteenth amendment to the United States Constitution. In count three, McGuire seeks declaratory judgment under 28

U.S.C. § 2201 requesting a statement that he was "acting in good faith in his job performance and finding that the city is obligated to pay his legal fees related to defending this action and other damages proximately caused by their conduct."

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that McGuire (1) fails to state a claim for a due process violation; (2) fails to states a claim for a violation of equal protection; and (3) fails to state a claim for declaratory judgment. For the following reasons, the court grants defendants' motion in part and denies it in part.

## I.    *Standard for Ruling on a Motion to Dismiss under Federal Rule 12(b)(6)*

For purposes of a motion to dismiss under F.R.C.P. 12(b)(6), the court determines whether the plaintiff can prove any set of facts consistent with the allegations that would give him or her a right to relief. *See, Wudtke v. Davel,* 128 F.3d 1057, 1061 (7th Cir. 1997) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163 (1993)). While it is not necessary to specify legal theories in the complaint, the facts alleged must give adequate notice to the defendant of the basis of the lawsuit. *Id.* (citing *Sledd v. Lindsay,* 102 F.3d 282, 288-89 (7th Cir. 1996)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McGrath v. City of Gary,* 976 F.2d 1026, 1031(7th Cir. 1992); *Gillman v. Burlington Northern R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir. 1992).

## II.    *Background*

The following facts are taken from McGuire's complaint and are assumed true for the purposes of ruling on this motion.

Sometime in 1998, Robert Nole, a CFD firefighter and Native American, complained of workplace racial harassment and alleged that McGuire was one of his harassers. Specifically, Nole alleged that McGuire left a hot lid from a cooking pot on a grill with the intent to injure Nole. Nole also alleged that McGuire called him a "motherf***ing a****le." The CFD launched an investigation into Nole's complaints. On September 2, 1998, the CFD determined that the charges against McGuire were unfounded. In August 1999, Nole filed a complaint in the Northern District of Illinois against McGuire and other CFD firefighters.

In September 1999, Rocks informed McGuire by letter that his office would not represent McGuire in the action filed by Nole. McGuire also alleges Rocks' letter went on to advise that he should "seek approval for payment of attorney fees under the Chicago Municipal Code (the "code"), § 2-152-170.

Section 2-152-170 of the code provides:

> If any claim or action, either civil or criminal in nature, is instituted against a current or former elected official, current or former appointed official or current or former employee of the City of Chicago or any agency of Chicago where such claim arises out of any act or omission made in good faith, occurring within the scope of such person's office or employment, the chairman of the committee on finance of the city council, with the approval and concurrence of the mayor, may at the request of such person appoint counsel to defend such person against any such claim or action.

3

On September 23, 1999, McGuire retained his own counsel and, in December 1999, he petitioned the city via a letter to Alderman Edward Burke, requesting payment of his attorneys' fees pursuant to the code. On December 29, 1999, McGuire alleges that the city notified McGuire that it declined to pay his attorneys' fees, stating Nole's lawsuit did not arise from or out of the performance of M.'s work duties. Further, McGuire alleges that the city also declined to represent other non-ranking firefighters named in Nole's complaint. However, McGuire alleges, the city did authorize payment of legal fees for the three ranking officers of the CFD named in Nole's complaint.

McGuire alleges that it was Rocks's responsibility to "recommend" to the city whether it should pay his legal fees arising from Nole's suit. Rocks made this recommendation, says McGuire, without the benefit of a sufficient investigation into the merits of Nole's allegations.

McGuire alleges that Rocks and the city, specifically Mayor Richard M. Daley ("Daley") and Burke have historically applied § 2-152-170 arbitrarily and in a discriminatory manner where firefighters are concerned. McGuire broadly alleges in his complaint that the city discriminates against firefighters and prefers members of the police department because they are politically aligned with the city. To support this assertion, McGuire alleges that the city has paid the legal fees of police officers who were accused of conduct falling outside of the scope of their employment. The point is, McGuire alleges that the city plays favorites when it decides which officers will receive legal representation under the code – and firefighters are routinely given short shrift.

## III.   *Discussion*

### A.   **Count One: Due Process**

In count one, McGuire alleges he was deprived of both procedural and substantive due process. Specifically, he alleges a due process violation in the city's decision to pay the fees under the code of ranking officers and denying fees of non-ranking officers like himself when they were equally potentially liable under the law in Nole's action. He alleges that the code does not provide an objective standard for its application, provides no opportunity to be heard, or any process to appeal an adverse decision. McGuire further contends that the defendants acted arbitrarily and capriciously, and have in the past given legal representation under the code to other city officials who have engaged in egregious behavior.

### 1.   **Procedural Due Process**

The Seventh Circuit has identified a two-step analysis to determine whether someone has been deprived of procedural due process under the fourteenth amendment. First, the court must determine whether the person has been deprived of a vested property right. If so, the court must then determine what process was due. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir. 1996); *see Union Pacific R.R. v. Village of South Barrington,* 958 F.Supp. 1285, 1294 (N.D.Ill. 1997).

Therefore, the threshold question before the court is whether McGuire has a property interest in having his legal fees paid by the city under the code. *See Border v. City of Crystal Lake,* 75 F.3d 270, 273 (7th Cir. 1996). The Supreme Court has established that property interests "are not created by the Constitution. Rather, they are created and their dimensions are

defined by existing rules or understandings that stem from an independent source such as state law . . ." *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491 (1985) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972)); *see also Miller v. Crystal Lake Park Dist.,* 47 F.3d 865, 867 (7th Cir. 1995)(stating "our cases have equated 'property' with the set of claims that state law recognizes.") A property interest can arise from a statute, regulation, municipal ordinance, or an express or implied contract – those "rules or understandings that secure certain benefits that support claims of entitlement to those benefits." *See Domiano v. Village of River Grove,* 904 F.2d 1142, 1147 (7th Cir. 1990)(quoting *Roth,* 408 U.S. at 577).

However created, a property interest is not protected by the Constitution unless a person has a "legitimate claim of entitlement" to a benefit; a unilateral expectation of the benefit will not suffice. *Id.* A legitimate claim of entitlement is one "that is legally enforceable – one based on statutes or regulations containing 'explicitly mandatory language' that links 'specified substantive predicates' to prescribed outcomes." *Miller,* 47 F.3d at 867 (quoting *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910 (1989)). Additionally, "[w]hen state law confers . . . [a] right on a public employee – confers, that is to say, an entitlement as distinct from merely the hope or expectation that his employer's discretion will be exercised in his favor – the right is considered a form of property from which the employee may not be deprived without due process of law." *Swick v. City of Chicago,* 11 F.3d 85, 86 (7th Cir. 1993)(citing *Bishop v. Wood,* 426 U.S. 341, 344-45, 96 S.Ct. 2074, 2077-78 (1976)); *see also, Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir. 1983)(holding that a legitimate claim of entitlement is one that is "securely and durably yours . . . as distinct from what you hold

6

subject to so many conditions as to make your interest meager, transitory, or uncertain"). Finally, the Northern District of Illinois on a number of occasions has granted motions to dismiss where an alleged property interest is in fact subject to discretion and is, therefore, not protected by the Constitution. *See e.g., Kevin v. Thompson,* 2000 WL 549440, at * 2-3 (N.D.Ill. 2000)(finding that circuit rules, which place no constraint on the discretion of the presiding judge to decide who should be approved as a DUI evaluator, provide no property interest under the due process clause); *Kielczynski v. Village of LaGrange,* 19 F.Supp.2d 877 (N.D.Ill. 1998) (finding that police officer did not have a protected property interest in being promoted because promotion was subject to city's discretion).

McGuire argues that § 2-152-170 of the code grants him a property interest in having legal counsel provided by the city. McGuire points to the section of the code which provides that in any claim instituted against an employee of the city "where such claim arises out of any act or omission made in good faith occurring within the scope of such person's office or employment, the chairman of the committee on finance, with the approval and concurrence of the mayor, may at the request of such person appoint counsel to defend such person." Defendants argue that this provision in the code leaves to the city's discretion the decision of whether to undertake a legal defense on behalf of one of its employees.

The Seventh Circuit has held that a plaintiff has a protected interest in being represented by counsel when the statute that confers the benefit contains mandatory language. *Benson v. Scott,* 734 F.2d 1181, 1184 (7th Cir. 1984). In *Benson.* the relevant portion of the Illinois Representation and Indemnification of State Employees Act (1981 Ill.Rev.Stat. ch. 127, §§1301-02) provided that when certain prerequisites were met "the Attorney General *shall . . .* appear on

behalf of such an employee and defend the action." *Id.* at 1183 (emphasis added). The court

found that such employees had a protected interest in the right to be "represented by the state in

civil action against them arising out of their employment" under the statute. *Id.*

Unlike the statute in *Benson,* however, the code that M. alleges confers a property interest

upon him vests the decision to provide defense counsel to city employees within the city's

discretion. It provides that when a suit is brought against a city employee in the course of his or

her employment, the city *may* appoint defense counsel. The city determined that McGuire was

not acting within the scope of his employment, and, acting within the discretion provided to it

under the code, decided not to provide him legal representation. The code does not confer upon

McGuire a legitimate claim of entitlement to legal representation and, therefore, conferred no

legitimate property interest. *See Roth,* 408 U.S. at 577; *Swick,* 11 F.3d at 86 (7th Cir. 1993).

Because McGuire has not adequately pled that he has a protected property interest that the

Constitution protects, he failed to meet he threshold requirement of a due process claim. The

"requirements of procedural due process apply only to the deprivation of interests encompassed

by the Fourteenth Amendment's protection of liberty and property." *Roth,* 408 U.S. at 570.

## 2.  **Substantive Due Process Claim**

In count one, McGuire also claims that he was denied fourteenth amendment substantive

due process rights in violation of § 1983 because the city's denial of legal representation was

"arbitrary" and "irrational." In order to properly challenge the substance of a government

decision on substantive due process grounds, the plaintiff must show: "(1) that the decision was

arbitrary and irrational, and (2) that the decision-makers either committed another substantive

constitutional violation or that state remedies are inadequate." *Srasburger v. Board of Educ.,*

143 F.3d 351, 357 (7th Cir. 1998). According to the Seventh Circuit, "a claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty, or property interest." *Zorzi v. County of Putnam*, 30 F.3d 885, 894 (7th Cir. 1994). Therefore, "the absence of any claim by the plaintiff that an interest in . . . property has been impaired is a fatal defect in the plaintiff's due process argument." *Id.* (citing *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 3-4 (7th Cir. 1974)). Only once a plaintiff can show he or she has a protected life, liberty, or property interest, may he or she then maintain a substantive due process cause of action for "arbitrary" actions. *See DeTomasco v. McGinnis*, 970 F.2d 211, 214 (7th Cir. 1992).

The court has already determined McGuire has not adequately alleged that he has a constitutionally protected property interest. Therefore, the court will not discuss whether the city's decision is arbitrary and irrational. The defendants' Rule 12(b)(6) motion to dismiss count one for failure to state a claim is GRANTED.

## B.    Count Two: Equal Protection Claim

In count two of his complaint, McGuire claims that he was deprived of the fourteenth amendment right to equal protection when the city denied him legal representation in the Nole suit. McGuire claims that the city has previously applied the code in an arbitrary and discriminatory manner. Specifically, he alleges that the city has "den[ied] legal representation to city officials who disagreed with them while approving representation to those who agreed with them." Further, McGuire alleges that the city has approved legal representation under the code to "police officers despite allegations of conduct clearly not within the scope of employment, such

as in the case of a civilian employee of the Chicago Police Department who had alleged twenty-four occasions of rape or sodomy by a supervising police officer."

Defendants' motion to dismiss count two argues that the city's decision not to provide M. legal representation under the code bears a rational relationship to a legitimate governmental purpose.

### 1.    Rational basis review

The equal protection clause grants to all citizens "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Baumgardner v. County of Cook,* 108 F.Supp.2d 1041, 1053 (N.D.Ill. 2000) (quoting *Harris v. McRae,* 448 U.S. 297, 322 100 S.Ct. 2671, 2691 (1980)).  When the state classifies by race or national origin or deprives a person of a fundamental right, such actions are subjected to strict scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *See Palmore v. Sidoti,* 466 U.S. 429, 432-33, 104 S.Ct. 1879, 1882 (1984).  Yet "when governmental legislation relates to matters of social or economic welfare, the law need only bear a rational relationship to a legitimate governmental purpose to withstand equal protection challenges." *Grant v. City of Chicago,* 594 F.Supp. 1441, 1450 (N.D.Ill. 1984).

While McGuire responds to the motion contending that he is a member of a "vulnerable group," he fails to specify just what it is.  The court assumes that McGuire refers to his classification as a non-ranking officer with the CFD.  McGuire has not supported the assertion that strict scrutiny review of the city's decision should be triggered because he is a non-ranking officer, as opposed to members of inherently suspect classifications like race or national origin. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249

10

(1985)(stating that classes based on race, alienage, or national origin receive "strict scrutiny").

Likewise, while McGuire claims that the city "erected barriers" by treating firefighters differently

from those who were "politically compliant," such as police officers, the distinction in treatment

between firefighters and the police officers, or the politically compliant and the non-compliant is

not one based on any suspect class. Additionally, McGuire does not suggest that there is a

"fundamental right" to have legal representation provided by the city in his civil suit, nor would

the case law support such a contention. *See Grant,* 594 F.Supp. at 1451 (recognizing that access

to complete criminal process, the right to vote, and the right to run for office are fundamental

rights whereas the rights to welfare benefits, public housing, and equal educational opportunities

are not fundamental)(citations omitted). Given the absence of both a fundamental right and a

suspect class in this case, rational basis review applies. *See Brazil-Breashers v. Bilandic,* 53 F.3d

789, 793 (7th Cir. 1995). McGuire's own response brief even states that he is entitled to relief

because "there was no rational basis for [the city's] determination."

## 2. Motion to dismiss under 12(b)(6) & rational basis review

When applying the rational basis standard of review, courts presume that the challenged

governmental action is constitutional. *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th

Cir. 1992) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516-17

(1972)). The Supreme Court has held that rational basis review "should not [be] subject to

courtroom fact-finding and may be based on rational speculation unsupported by evidence or

empirical data." *F.C.C. v. Beach Comm., Inc.,* 508 U.S. 307, 315, 313 S.Ct. 2096, 2102 (1993).

In fact, it is "entirely irrelevant for constitutional purposes whether the conceived reason for the

challenged distinction actually motivated the [state action]." *Id.* at 315 (citing *United States R.R.*

11

*Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461 (1980)). A classification does not fail rational basis review because it "is not made with mathematical nicety or because in practice it results in some inequity." *Dandridge v. Williams,* 397 U.S. 471, 486 (quoting *Lindsey v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 354 (1911)).

The court encounters a perplexing situation, however, when considering the rational relationship standard in conjunction with the standard for a 12(b)(6) motion to dismiss. *Baumgardner,* 108 F.Supp. 2d at 1055. The general rule in equal protection analysis is that state action is presumed to be valid and will be sustained if the classification drawn by the state is rationally related to a legitimate state interest. *See Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083 (1981)); *McGowan v. Maryland,* 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1104-05 (1961). Yet, the standard for a 12(b)(6) motion to dismiss requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." *Baumgardner,* 108 F.Supp.2d at 1055 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233 (1984)). The Seventh Circuit addressed this situation in *Wrobleski,* stating that:

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations. (citations omitted). The rational basis standard, of course, cannot defeat the plaintiff's benefit to the broad 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the subjective burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

> 965 F.2d at 459-60.

12

The *Wrobleski* court then held that for an equal protection claim to survive a motion to dismiss subject to rational basis review, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to governmental classifications." *Id.* at 460. *See Baumgardner,* 108 F.Supp.2d at 1055-56 (plaintiff overcame rational basis presumption in a 12(b)(6) motion to dismiss by alleging demotion on the basis of his disability).

The Northern District of Illinois has found on a number of occasions that when a state's action is rationally related to a legitimate government objective, a defendant's 12(b)(6) motion to dismiss should be granted. *See e.g., Phelan v. City of Chicago,* 125 F.Supp.2d 870, 876 (N.D.Ill. 2000) (granting a motion to dismiss under Rule 12(b)(6) because plaintiff did not allege the absence of a rational basis for the city's acts); *University Professionals of Illinois Local 4100 v. Edgar,* 1995 WL 559956, at *6 (N.D.Ill. 1995)(granting 12(b)(6) motion to dismiss because a statutory classification differentiating between academic faculty at one university from nonacademic employees and from academic faculty at other state colleges and universities was rational); *Grant,* 594 F.Supp. at 1451 (granting 12(b)(6) motion to dismiss because a booting ordinance, which was claimed to adversely affect indigents, rationally served the government's interest of keeping the streets free from congestion); *But see Baumgardner,* 108 F.Supp. at 1055-56 (denying Rule 12(b)(6) motion to dismiss because there is no rational basis for allegedly demoting plaintiff solely because of his disability).

3.    **Ranking and non-ranking firefighters**

McGuire claims the city violated his equal protection rights because it denied him, a non-ranking firefighter, legal representation while providing it to ranking firefighters accused by Nole of the same harassment.

13

The city argues that it determined not to offer M. legal representation under the code because Nole's allegations against him encompassed conduct outside of his professional duties. Thus, the city argues that the distinction it has drawn between ranking and non-ranking firefighters, as they relate to Nole's lawsuit, withstands rational basis scrutiny because Nole's allegations against the ranking firefighters have different legal consequences than those claims against non-ranking firefighters like McGuire. The city argues that the "compelling legal distinction" for why it decided to represent the supervising officers is that Nole alleged that they "were aware of the alleged discriminatory conduct by their subordinates, yet they failed to fulfill their duties to prevent harassment by their subordinates." Non-ranking firefighters like McGuire, on the other hand, do not have supervisory responsibilities. Therefore, the allegations against McGuire do not encompass conduct within his professional duties.

McGuire reads the city's supervisory/non-supervisory distinction between the ranking and non-ranking officers and argues that the city has retreated from its original justification for denying McGuire legal representation – that the claims against him alleged conduct falling outside of his official duties. But the city's position is internally consistent. If, as the city argues, it is subject to § 1983 liability because the ranking firefighters failed their supervisory responsibilities to Nole, then Nole's allegations come within the ranking firefighter's official duties. However, the same could not be said for McGuire, the argument goes, because he was not a ranking officer with supervisory duties. Therefore, the distinction that the city drew when it determined for which of its officers it would provide legal representation would be considered rational because of the differences inherent in the ranking/non-ranking job responsibilities.

14

Section 1983 liability may not be imposed against a municipality on the theory of *respondeat superior*. *Leatherman*, 507 U.S. at 166, 113 S.Ct. at 1162 (1993); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 2723 (1989); *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 509 (7th Cir. 1993). Rather, to establish liability against the city, Nole was required to allege that the racial harassment he endured was caused either by (1) the enforcement of an express policy of the city, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Whatever basis of liability Nole claimed, it is not apparent from the city's argument that the distinction it drew between ranking and non-ranking firefighters was a material one so far as § 1983 liability is concerned.

In *Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001), plaintiff, the widower of a woman who was killed by a drunk police officer filed a § 1983 claim against the city alleging that supervising officers in the officer's district ignored the recurring conduct of their subordinate officers by permitting them to have parties at the station and then drive while intoxicated. The Seventh Circuit held that the allegations were insufficient to establish municipal liability under § 1983 because "the complaint only alleges that the CPD and its supervisory officials turned a blind eye to the parties. The complaint does not allege any facts tending to show that city policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that city policymakers should have known about the behavior." The Seventh Circuit specifically noted that "the only specific individuals identified by [plaintiff] as failing to stop the

parties are CPD superior officers and supervisors at District 25. These individuals do not qualify as policymakers for the city." *Id.* at 505.

Regardless of which of the three bases of § 1983 liability Nole pursued (and it does not appear that he was alleging liability under the first basis, an express municipal policy authorized discrimination), it is not evident that there was a justification for the city to distinguish McGuire from ranking firefighters on the basis of supervisory authority, at least not so far as Nole's claims were concerned. Thus, if Nole pursued his claim on the basis that the city had a widespread custom or policy of discrimination against minority firefighters (the second basis listed above), the city has not directed the court to precedent which shows the city, as a matter of law, is more subject to liability if the discrimination was perpetrated by ranking instead of non-ranking firefighters. Or, if Nole claimed that a person with final policymaking authority caused his injury, the *Latuszkin* court held that he must make claims against city policymakers, not supervising officers, to establish § 1983 liability. Thus, the city's distinction between ranking and non-ranking officers does not seem material in terms of shielding its liability.

### 4. Politically compliant officers and non-politically compliant officers

McGuire also alleges that his equal protection rights under the fourteenth amendment were violated because the city plays favorites when deciding to whom it provides legal counsel under the code. Specifically, he claims that the city favors members of the police department over firefighters.

In *Smith v. Daley,* 1994 WL 325749 (N.D.Ill. July 5, 1994), a group of "opposition" Chicago aldermen raised an identical claim and survived a Rule 12(b)(6) motion to dismiss. Specifically, they alleged that Mayor Daley and Alderman Burke, chairman of the finance

16

committee of the city council, used § 2-152-170 of the code to pay the legal fees of aldermen who agreed with them and to refuse payment of legal fees for aldermen who did not. The District Court concluded that "[Daley] and [Burke] are authorized policymakers under Illinois law." *Id.* at *4; *see* 65 ILCS 5/1-1-2(2). Therefore, the city could be subject to § 1983 liability because the mayor and the finance committee chairman have final policymaking authority if their use of the code was pursuant to an unconstitutional policy of the city itself. *Id.*; *see, Monell,* 436 U.S. at 690, *McNabola,* 10 F.3d at 509-10.

McGuire's claim also must survive the defendants' Rule 12(b)(6) motion to dismiss. The complaint sets forth sufficient allegations to state a § 1983 claim. Further, the mayor and the finance committee chairman have final decision making authority over the payment of legal fees under the code. Finally, McGuire alleges that Mayor Daley and Alderman Burke have used the code in a manner that violates his equal protection claim. Therefore, he states a claim that survives the city's Rule 12(b)(6) motion to dismiss.

For the same reasons, McGuire's complaint also survives the defendants' motion to dismiss on the grounds that it does not satisfy the requirements of *Monell*. Specifically, the city argues in its motion to dismiss that both counts one and two fail to state a claim under Rule 12(b)(6) because McGuire has failed to allege unconstitutional conduct by an official with final policymaking authority. Defendants argue that Rocks is neither possessed with final policymaking authority nor is he alleged to have made the determination to deny McGuire legal fees pursuant to the code, but only that he made a recommendation to the city.

Against all odds, McGuire, in his response to the motion to dismiss, casts aside the argument that, in his complaint, he makes specific allegations against Mayor Daley and

Alderman Burke in favor of the argument that Rocks is indeed a policymaker. McGuire is not required to name Mayor Daley and Alderman Burke as defendants in their official capacities to make claims that their official conduct was unconstitutional. *Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989); *Gralak v. City of Chicago*, 1994 WL 5562 at * 2 (N.D.Ill. Feb. 23, 1994); *Smith*, 1994 WL 325749 at *3 (Where plaintiffs named the city as a defendant, there was no need to name Mayor Daley and Alderman Burke as defendants in their official capacities). As stated above, they are policymakers under Illinois law. Therefore, the discussion between the parties over Rocks is irrelevant. McGuire has satisfied the pleading requirement in *Monell*.

### C. Count Three: Declaratory Judgment

In count three of his complaint, McGuire requests declaratory judgment pursuant to 28 U.S.C. § 2201 "that he was acting in good faith in his job performance and finding that the city is obligated to pay his legal fees related to this action and other damages proximately caused by their conduct." In their motion to dismiss, defendants' contend that no useful purpose would be served by granting declaratory judgment because he seeks the very same findings of fact and conclusions of law as he seeks in counts one and two.

When seeking injunctive or declaratory relief, a plaintiff must establish "that he is in immediate danger of sustaining some direct injury." *Feit v. Ward*, 886 F.2d 848, 857 (7th Cir. 1989). Declaratory judgment is an appropriate remedy only when determining the existing rights of parties, not when a party seeks to enforce his or her rights after the fact. *Zic v. The Italian Govt. Travel Office*, 130 F.Supp.2d 991, 998 (7th Cir. 2001). The Northern District of Illinois has recognized that "while a plaintiff who has been constitutionally harmed can bring a §1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action

unless he or she can demonstrate a good chance of being likewise injured in the future." *Bledsoe v. City of Chicago,* 1996 WL 535344, at * 5 (N.D. Ill 1996)(citing *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)).

McGuire's alleged injuries do not suggest the likelihood of any continuing harm, nor has he alleged any likelihood that he will be similarly injured in the future. Therefore, defendants' motion to dismiss count three is GRANTED.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss counts one and three of McGuire's complaint is GRANTED. Defendants' motion to dismiss count two is DENIED. The parties are ordered to appear before the court for status on Friday, October 19, 2001 at 10:00 a.m. IT IS SO ORDERED.

_Blanche M. Manning_
**Blanche M. Manning, U.S.D.J.**

Dated: SEP 28 2001